IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

DONALD DICKENS,

      Plaintiff,

v.           //      CIVIL ACTION NO. 1:12CV76
      (District Judge Keeley)
      (Magistrate Judge Kaull)

WERNER ENTERPRISES, INC.,

      Defendant.

## OPINION/ REPORT AND RECOMMENDATION REGARDING DEFENDANT'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

### I. INTRODUCTION

Pending before the Court is the motion to dismiss of the defendant, Werner Enterprises, Inc. ("Werner"). The matter was referred to the undersigned United States Magistrate Judge for Report and Recommendation to United States District Judge Irene M. Keeley. For the reasons that follow, the undersigned **RECOMMENDS** Werner's motion to dismiss the claim of the plaintiff, Donald Dickens ("Dickens") (Docket Entry 8) be **DENIED**.

### II. FACTUAL BACKGROUND

This is a case alleging Libel and Tortious Interference. For purposes of this motion, the Court accepts the factual allegations in the Complaint as true. Plaintiff Dickens has worked as a Commercial Vehicle Driver for approximately 3 ½ years. Dickens drove a truck for Defendant Werner. In July 2009, he became an Owner-Operator with Werner, and purchased a truck from Werner, financed through Wells Fargo. In August 2011, Werner terminated Dickens' Owner-Operator contract over a dispute unrelated to the current cause of action. That same month Dickens moved to Clarksburg, West Virginia, and subsequently applied for driver positions at FedEx and

Elder-Beerman. He provided these potential employers with the Werner Employment Verification fax number to send a Request for Information and Employment Verification Request to Werner, as required by The Federal Motor Carrier Safety Administration ("FMCSA"). FedEx subsequently informed Dickens that he did not qualify to operate a truck under its authority because of the "several accidents" on the Report provided by Werner. FedEx sent Dickens a copy of the Report, which contained several false statements about accidents in which Dickens was allegedly involved. Dickens requested Werner remove the false statements from his Report, but Werner denied the request. Subsequently, Elder-Beerman also received the Report from Werner, still containing the false information. Dickens demands judgment against Werner for retraction of the false information, compensatory damages, punitive damages, interest, costs of suit, and any other relief the Court may find just and proper.

### III. PROCEDURAL HISTORY

On March 29, 2012, Plaintiff Donald Dickens ("Dickens"), proceeding *pro se*, commenced this lawsuit in the Circuit Court of Harrison County, West Virginia, against Defendant Werner Enterprises, Inc. ("Werner"). On May 9, 2012, Werner removed the case to this Court [Docket Entry 6]. On May 15, 2012, Werner filed a "Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)" and Memorandum in Support [Docket Entries 8 and 9]. On June 1, 2012, the Court advised Dickens of his right to file any opposition to Werner's motion, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) [Docket Entry 10]. On June 26, 2012, Dickens filed his "Response in Opposition to Defendant's Motion to Dismiss" and Memorandum of Law in support [Docket Entry 12].

## IV. DEFENDANT'S MOTION TO DISMISS

To survive a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain factual allegations sufficient to state a plausible claim for relief. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009); Bell Atlantic Corp. V. Twombly, 550 U.S. 544, 557 (2007). "The plausibility standard requires a plaintiff to demonstrate more than a sheer possibility that a defendant has acted unlawfully. It requires the plaintiff to articulate facts, when adopted as true, that show that the plaintiff has stated a claim entitling him to relief, i.e., the plausibility of entitlement to relief." Francis v. Giacomelli, 588 F.3d 186, 193 (internal quotations omitted).

Although the Court must accept factual allegations in a complaint as true, this "tenet . . . is inapplicable to legal conclusions." Id. at 1950. Thus, a complaint may be dismissed when the facts alleged clearly demonstrate that the plaintiff has not stated a claim and is not entitled to relief. 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 at 344-45 (3d ed. 2007). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1949 (citation omitted).

**A.     The Federal Motor Carrier Safety Regulations ("FMCSR")**

In an effort to promote greater safety in the operation of large trucks on the Nation's highways, in 1970 the United States Department of Transportation promulgated the Federal Motor Carrier Safety Regulations establishing minimum qualifications for commercial motor vehicle drivers and requiring employers to investigate the driving record and employment history of prospective employees being hired to drive large trucks. 49 C.F.R. sections 390.1-390.37, 391.1-391.69 (2012).

The rules expressly establish only minimum duties of motor carriers with respect to the qualification of their drivers.

The FMCSR defines the words "shall" and "must" as imperatives; "should" as recommendatory; and "may" as permissive.  49 C.F.R. section 390.7

The regulations require that drivers applying for employment must furnish a list "of the applicant's employers during the 3 years preceding the date the application is submitted indicating the term and reason for leaving employment."  49 C.F.R. section 391.21(b)(9),(10).

- Section 391.23(d)  provides:

> The prospective motor carrier must investigate, at a minimum, the information listed in this paragraph from all previous employers of the applicant that employed the driver to operate a CMV within the previous three years . . . .
>
> (1) General driver identification and employment verification information.
>
> (2) The data elements as specified in section 390.15(b) of this chapter for accidents involving the driver that occurred in the three-year period preceding the date of the employment application.
>
>     (I) Any accident as defined by section 390.5 of this chapter.
>
>     (ii) Any accidents the previous employer may wish to provide that are retained pursuant to section 390.15(b)(2), or pursuant to the employer's internal policies for retaining more detailed minor accident information.

- Section 390.5 defines "accident" as " . . . an occurrence involving a commercial motor vehicle operating on a highway in interstate or intrastate commerce which results in:

> (I) A fatality;
>
> (ii) Bodily injury to a person who, as a result of the injury, immediately receives medical treatment away from the scene of the accident; or

    (iii) One or more motor vehicles incurring disabling damage as a result of the accident, requiring the motor vehicle(s) to be transported away from the scene by a tow truck or other motor vehicle."

- Section 391.23(g) provides that previous employers must:

(1) Respond to each request for the DOT defined information in paragraphs (d) and (e) of this section within 30 days after the request is received . . . .

(2) Take all precautions reasonably necessary to ensure the accuracy of the records . . . .

- Section 391.23(l) provides as follows:

(1) No action or proceeding for defamation, invasion of privacy, or interference with a contract that is based on the furnishing or use of information in accordance with this section may be brought against - -

  (I) a motor carrier investigating the information, described in paragraph (d) and (e) of this section, of an individual under consideration for employment as a commercial motor vehicle driver,

  (ii) A person who has provided such information.

(2) The protections in paragraph (l)(1) of this section do not apply to persons who knowingly furnish false information or who are not in compliance with the procedures specified for these investigations.

**B.**  **<u>Werner's Statements are not Protected by an Absolute Privilege.</u>**

Werner first argues the defense of absolute privilege to publish the information complained of by Dickens, because it is required by law to disclose that information, citing Section 391.23(g). Although that section does require certain disclosures, it also expressly states that the reporting entity <u>must</u> "take all precautions reasonably necessary to ensure the accuracy of the records." Dickens asserts in his Complaint that the statements regarding the three "accidents," on 12/23/2008, 3/11/2009, and 5/2/2011, are false. He further states in his Response to the Motion to Dismiss that

the three "events" would not be classified as "accidents" required to be reported even if they had occurred, as they did not involve a fatality, bodily injury, or disabling damage. Although a previous employer "may wish to provide" information on minor accidents, these are not "required by law."

Finally, the Regulations themselves provide that the protections provided in section 391.23(l)(1), "do not apply to persons who knowingly furnish false information or who are not in compliance with the procedures specified for these investigations." The undersigned recognizes there is a dispute over whether the information provided was false, and whether Werner was in compliance. For purposes of this motion, however, the undersigned finds Werner is not protected by an absolute privilege.

C.  **Werner's Statements are Protected by a Qualified Privilege, Which May be Defeated by Proof of "Actual Malice"**

Werner next argues that the information it provided is protected by qualified privilege. This Court agrees: "West Virginia recognizes a qualified privilege for communications by a former employer when solicited by a prospective employer and limited to matters related to the employee's work." Sarkissian v. West Virginia University Board of Governors, 1:05cv144, 2008 WL 901722 (N.D.W.Va. March 31, 2008, J. Stamp). Indeed, Dickens concedes that Werner may assert a qualified immunity defense. A qualified immunity privilege, may, however, be defeated by a showing of actual malice. Crump v. Beckley newspapers, Inc., 173 W.Va. 699 (1983). In Crump, the West Virginia Supreme Court of Appeals explained as follows:

> Qualified privileges are based upon a public policy that it is essential that true information be given whenever it is reasonably necessary for the protection of one's own interests, the interests of third persons or certain interests of the public. . . . A qualified privilege exists when a person publishes a statement in good faith about a subject in which he has an interest or duty and limits the publication of the statement to those persons who have a legitimate interest in the subject matter . . . . [A] bad motive will defeat a qualified privilege defense . . . . In an action of libel based on a

>publication qualifiedly privileged, an abuse of the privilege destroys the protective characteristics of the privilege.

Id. at 78-79 (citations and quotation marks omitted).

The court in Crump further explained that it is not necessary that the publisher intentionally publishes false material, but that a qualified privilege may be defeated if the publisher abuses it by publishing false material with reckless disregard for its truth or falsity.

Similarly, although the pertinent Federal Motor Safety Carrier Regulation does bar civil suits related to furnishing or use of information such as accident history reports against providers of such information, the rule expressly states that these protections "do not apply to persons who knowingly furnish false information, or who are not in compliance with the procedures specified for these investigation." 49 C.F.R. section 391.23(l)(1) and (2).

The undersigned recognizes there is a disputed issue of fact as to whether the information provided by Werner was false. Further, if it was false, there is still a dispute over whether Werner knew it was false; published it with reckless disregard for its truth or falsity; or was or was not in compliance with the procedures specified for investigations under the FMCSR.

Werner is free to claim the protections under Section 319(l)2 and West Virginia law; however, at this stage of the proceedings it would be premature to dismiss this matter where Dickens' complaint alleges that the information supplied by Werner was false and was published with "actual malice." Because this court must assume that these allegations are true for the purposes of this motion, Dickens' claim cannot be dismissed now but may later be subject to summary judgment.

The undersigned therefore finds Werner's Motion to Dismiss should be denied.

## V.  RECOMMENDED DECISION

For the reasons above stated, the undersigned United States Magistrate Judge **RECOMMENDS** Defendant Werner Enterprises, Inc.'s Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) be **DENIED**.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.  A copy of such objections should also be submitted to the Honorable Irene M. Keeley,  United States District Judge.  Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation.  28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to transmit a copy of this Report and Recommendation to counsel of record and to send a copy to the *pro se* Plaintiff by Certified United States Mail at his last-provided address.

Respectfully submitted this 26TH day of July,  2012.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE