**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**DONALD DICKENS,**

**Plaintiff,**

**v.** // **CIVIL ACTION NO. 1:12CV76
(Judge Keeley)**

**WERNER ENTERPRISES, INC.,**

**Defendant.**

**ORDER ADOPTING IN PART REPORT AND RECOMMENDATION [DKT. NO. 15], DENYING DEFENDANT'S MOTION TO DISMISS [DKT. NO. 8], AND GRANTING PLAINTIFF LEAVE TO FILE A MORE DEFINITE STATEMENT**

Before the Court is the Magistrate Judge's Report and Recommendation concerning the civil complaint filed by Donald Dickens. For the reasons set forth below, the Court **Adopts In Part** the Magistrate Judge's Report and Recommendation and **Denies** the defendant's motion to dismiss.

**I.**

On March 30, 2012, the pro se plaintiff, Donald Dickens ("Dickens"), filed a complaint in the Circuit Court of Harrison County, West Virginia against Werner Enterprises, Inc. ("Werner") alleging libel and tortious interference. Werner removed the case to this Court on May 9, 2012, based on diversity. (Dkt. No. 6). Six days later, on May 15, 2012, Werner filed a motion to dismiss Dickens's complaint. (Dkt. No. 8). This Court referred the matter to Magistrate Judge John S. Kaull for a report and recommendation. One June 1, 2012, Judge Kaull issued a Roseboro notice to Dickens, and Dickens then responded to Werner's motion to dismiss on June

26, 2012. (Dkt. Nos. 10, 12). Reacting to Dickens's response brief, Werner filed a "Motion to Strike Matters in Plaintiff's Response and Memorandum of Law in Opposition to Defendant's Motion to Dismiss that are Outside of the Pleadings or Alternatively [a] Motion to Convert Defendant's Motion to Dismiss into a Motion for Summary Judgment." (Dkt. No. 13). Judge Kaull granted Werner's motion to strike the twelve exhibits accompanying Dickens's response, but denied its motion to convert its motion from a motion to dismiss to a motion for summary judgment. (Dkt. No. 14).

Magistrate Judge Kaull issued his Opinion and Report and Recommendation ("R&R") on July 26, 2012, which recommended that this Court deny Werner's motion to dismiss because Werner had failed to establish that it was entitled to the defense of absolute privilege, and Dickens's complaint contained facts that, if accepted as true, could establish his entitlement to relief even if Werner were protected by qualified privilege.

Werner filed objections to Magistrate Judge Kaull's R&R on August 9, 2012. In these objections, Werner argued that Magistrate Judge Kaull had improperly considered matters outside of the pleadings in evaluating its motion to dismiss, and incorrectly had accepted as true Dickens's allegation that the libelous statements made by Werner were false and published with "actual malice."

**II.**

Dickens alleges that, at the time he filed this suit, he had worked as a commercial vehicle driver for Werner for 3.5 years.[1] In September 2011, he applied for a job as a FedEx driver. When FedEx contacted Werner to verify Dickens's prior employment and driving record, Werner supplied FedEx with an Employment Verification Report, as required by Federal Motor Carrier Safety Regulation § 391.23(g). Werner then supplied another such report in November 2011 in response to queries about Dickens by Elder-Beerman. Dickens contends that Werner's reports contained the following false claims of commercial vehicle accidents:

- December 23, 2008, Louisville, Kentucky – "Moving forward and struck another vehicle;"
- March 11, 2009, Belville, Ontario – "Backing up and struck another vehicle;"
- May 2, 2011, Avondale, Pennsylvania – "Backing up and struck another vehicle."

According to Dickens, not only were these statements untrue, but Werner also made them with actual malice, specifically a reckless disregard for their truth.(Dkt. No. 6 at 11). Dickens claims that, because of Werner's publication of these untrue statements,

[1] Dickens's complaint does not explicitly state that Werner employed him. However, the Court infers that this was the case. Regardless, the identity of Dickens's employer for those 3.5 years is not dispositive.

he suffered a loss of business opportunities, among other damages.

**III.**

To survive a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain factual allegations sufficient to state a plausible claim for relief. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007). In its determination, a court must consider all well-pled factual allegations in a complaint as true and construe them in the light most favorable to the plaintiff. Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 519 F.3d 250, 253 (4th Cir. 2009). Although a court must accept factual allegations in a complaint as true, it need not accept the plaintiffs' legal conclusions. Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009).

A court may also consider facts derived from sources beyond the four corners of the complaint, including documents attached to the complaint, documents attached to the motion to dismiss "so long as they are integral to the complaint and authentic," and facts subject to judicial notice under Fed. R. Evid. 201. Philips v. Pitt Cty. Mem. Hosp., 572 F.3d 176, 180 (2009) (citing Blankenship v. Manchin, 471 F.3d 523, 526 n. 1 (4th Cir. 2006)); see also Katyle v. Penn. Nat. Gaming, Inc., 637 F.3d 462, 466 (4th Cir. 2011).

**IV.**

Werner's motion to dismiss for failure to state a claim argues that, even if Dickens has stated claims of libel or tortious interference with a business relationship, Werner has two defenses at law that defeat those claims and require dismissal pursuant to FRCP 12(b)(6). Namely, Werner claims absolute privilege, or alternatively, a qualified privilege that Dickens fails to defeat by a showing of actual malice.

For clarity's sake, a review of the elements of libel and tortious interference under West Virginia law are helpful. "The essential elements for a successful defamation action by a private individual are (1) defamatory statements; (2) a nonprivileged communication to a third party; (3) falsity; (4) reference to the plaintiff; (5) at least negligence on the part of the publisher; and (6) resulting injury." Syl. pt. 1, Crump v. Beckley Newspapers, Inc., 320 S.E.2d 70 (1984). "To establish prima facie proof of tortious interference, a plaintiff must show: (1) existence of a contractual or business relationship or expectancy; (2) an intentional act of interference by a party outside that relationship or expectancy; (3) proof that the interference caused the harm sustained; and (4) damages. Garrison v. Herbert J. Thomas Memorial Hosp. Ass'n, 438 S.E.2d 6 (1993). "While defamation is not a necessary element for a cause of action for tortious interference

with business relationship, defamation may, in certain cases, be a part of the interference." Id. at 22. Notably, Werner's motion does not challenge the sufficiency of Dickens's complaint as to the essential elements of defamation or tortious interference.

Privilege is a defense to claims of both defamation and tortious interference. Id. at 13; Crump, 320 S.E.2d at 77.

> There are two classes of privileges available in defamation actions: absolute and qualified. Absolute privilege is limited to those situations "where there is an obvious policy in favor of permitting complete freedom of expression, without any inquiry as to the defendant's motives."

Crump, 320 S.E.2d at 77. "The scope of absolute privilege is confined within fairly narrow limits. With a few exceptions ... absolutely privileged communications are limited to legislative, judicial and quasi-judicial proceedings and other acts of the State." Id. at 78.

An absolute privilege is a complete defense to a claim of defamation. On the other hand, a qualified privilege is an incomplete defense that exists when "a person publishes a statement in good faith about a subject in which he has an interest or duty and limits the publication of the statement to those persons who have a legitimate interest in the subject matter." Id.

A bad motive, or actual malice, may defeat a qualified privilege. In that vein, publication of false, defamatory material

in reckless disregard for its truth or falsity is a form of actual malice that will also defeat a qualified privilege. Id.

**A. Werner's statements are not protected by absolute privilege.**

Werner argues that its statements are protected by absolute privilege because it "is required by law to communicate matters related to [Dickens's] accident history as a driver of a commercial vehicle." By this, Werner means that the Federal Motor Carrier Safety Regulations obligate it to provide information about an employee's past accidents to the employee's potential employers.

To support its contention of an absolute privilege defense, Werner relies heavily on Davis v. Monsanto Co., 627 F.Supp. 418, 421 (S.D.W. Va. 1986), which held that an employer's disclosure of a mentally disturbed employee's medical history to authorities was absolutely privileged because the employer had a legal duty to ensure a safe workplace. Id. at 421 ("A communication of private facts is absolutely privileged if required by the law."). Notably, however, the principal holding in Davis, that "[a] communication of private facts is absolutely privileged if required by the law," has never been adopted by the West Virginia Supreme Court of Appeals. Nor has West Virginia adopted the Restatement (Second) of Torts § 592A, "Publication Required by Law," which states that "[o]ne who is required by law to publish defamatory matter is absolutely

privileged to publish it." Furthermore, neither Crump nor the cases cited at footnote 5 of that opinion support the existence of an absolute privilege for all communications made pursuant to law. See Davis, 627 F. Supp. at 421 (citing Crump, 320 S.E.2d at 83 n.5.).[2]

Despite the holding in Davis, the fact that the West Virginia Supreme Court of Appeals has not adopted what would be a broad affirmative defense is telling. Moreover, even assuming that West Virginia had adopted such a defense, there is no West Virginia precedent applying that defense to communications made pursuant to the Federal Motor Carrier Safety Regulations. Therefore, the Court will not recognize an absolute privilege from defamation liability for communications made pursuant to the Federal Motor Carrier Safety Regulations, and concludes that Werner has failed to establish that Dickens's claim is barred on this ground.

**B. Werner's statements are protected by qualified privilege.**

While Werner may not assert the defense of absolute privilege based on statements compelled by law, it clearly may assert a defense of qualified privilege. In Thacker v. Peck, 800 F.Supp. 372, 386 (S.D.W. Va. 1992), following a survey of West Virginia case law, the district court concluded that West Virginia would

[2] The cases cited at footnote 5 of Crump support the axiom that communications made in the context of legal proceedings are absolutely privileged. See, e.g., Bond v. Pecaut, 561 F.Supp. 1037 (D.C.Ill. 1983) (absolute immunity for papers submitted in course of judicial proceeding).

likely recognize a qualified privilege "with respect to certain statements by an employer about an employee." Thacker noted that West Virginia had applied a qualified privilege to a letter of dismissal listing the causes of an employee's dismissal. Mauck v. City of Martinsburg, 280 S.E.2d 216, 221, (W. Va. 1981). See also Parker v. Appalachian Elec. Power Co., 30 S.E.2d 1 (W. Va. 1944)(recognizing a qualified privilege regarding a letter that discussed why a former employer would not rehire a certain employee). Based on the line of authority relied on in Thacker, this Court is persuaded that the West Virginia Supreme Court of Appeals would recognize a qualified privilege as to communications such as Werner's dealing with a former employee's work performance.

Crump held that "[t]he primary manner in which a qualified privilege to publish defamatory statements may be defeated is by a showing of actual malice." 320 S.E.2d at 78. Under Crump, actual malice includes "a publication of false defamatory material in reckless disregard for its truth or falsity." Id.

Relying on this principle, Werner argues that Dickens offers only a legal conclusion in his complaint – and a not factual allegation – that it recklessly disregarded the truth of the statements it made in the Employment Verification Report. Werner contends Dickens's complaint insufficiently pleads actual malice, and therefore cannot defeat its defense of qualified privilege.

In his response, Dickens attached a letter from Werner that he claims establishes Werner's reckless disregard of the truth of the statements in the Employment Verification Report.[3] A court may consider a plaintiff's exhibit on a 12(b)(6) motion to dismiss if the exhibit was integral to and relied on in forming the complaint, and the opposing party does not dispute its authenticity. Blankenship v. Manchin, 471 F.3d 523, 526 at n.1 (4th Cir. 2006). In Blankenship, the court applied this inclusive rule to enable it to consider a short newspaper article that contained a public figure's statements specifically referenced to in the complaint. Id. at 526-27. The Fourth Circuit has also applied the rule to documents explicitly referred to by a complaint, but not attached to it, and documents upon which a complaint is based. American Chiropractic Ass'n. v. Trigon Healthcare, Inc., 367 F.3d 212, 235 (4th Cir. 2004).

Hence, the question becomes whether the letter is integral to Dickens's complaint, and whether he relied on it in forming his complaint. Notably, Dickens's complaint does not explicitly reference the letter. Nor do his basic defamation and intentional interference claims rest on its contents. Further, unlike Blankenship, Dickens's complaint does not quote or describe its

---

[3] See Exhibit 4 of the response brief, which along with eleven other exhibits the magistrate judge struck from the record.(Dkt. No. 14).

contents. Rather, it simply states that "Werner entertained serious doubts as to the truth of the [statements made on the Employment Verification Report]." (Dkt. No. 6 at 11). Based on these comparisons, the Court cannot conclude that Dickens relied on the letter in forming his complaint, nor is the document integral to his complaint. Therefore, the Court will not consider the letter exhibit in its analysis of Werner's motion to dismiss.

Under the plausibility pleading standard in Iqbal/Twombly, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555, 127 S.Ct. 1955. "To discount such unadorned conclusory allegations, 'a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" Francis v. Giacomelli, 588 F.3d 186, 193 (citing Iqbal, 129 S.Ct. at 1950). While courts should liberally construe pro se complaints, those complaints are not immune from the heightened pleading requirements of Iqbal/Twombly. Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008).

A claim of actual malice must be supported by some factual allegations, or the reviewing court is not entitled to assume the

truth of that claim.[4] Iqbal, 556 U.S. at 680-81; see also Schatz v. Republican State Leadership Comm., 669 F.3d 50, 58 (1st Cir. 2012) ("[T]o make out a plausible malice claim, a plaintiff must still lay out enough facts from which malice might reasonably be inferred — even in a world with Twombly and Iqbal."). Here, Dickens has offered no factual allegations – within the four corners of his complaint – that Werner acted with actual malice. He only states:

> The Publication was not privileged because it was published by Defendant with actual malice, (knowledge of the falsity of the Statements, a reckless disregard for the truth or falisty of the Statements, and Defendant, in fact, entertained serious doubts as to he trust of the Statements).

Other courts have rejected such a "mere recitation of the legal standard." Mayfield v. National Ass'n for Stock Car Auto Racing, Inc., 674 F.3d 369, 378 (4th Cir. 2012). Lacking factual support, such as a reference to the letter he attached as an exhibit to his response brief, Dickens's allegation of actual malice is a legal conclusion that this Court will not assume to be

[4] Fed. R. Civ. Pro. 9(b) excuses a plaintiff from pleading malice and with particularity. Iqbal made clear, however, a pleading of malice is still subject to Rule 8, and therefore still subject to the Iqbal/Twombly plausibility standard. Iqbal, 556 U.S. at 687. ("And Rule 8 does not empower respondent to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss."). See also Mayfield v. National Ass'n for Stock Car Auto Racing, Inc., 674 F.3d 369 (4th Cir. 2012) (applying the Rule 8 plausibility analysis to actual malice plead in a defamation case).

true. As such, it does not rebut Werner's qualified privilege defense.

**C. Conclusion**

For the reasons discussed, Werner has not established its entitlement to the defense of absolute privilege. Nor has Dickens alleged sufficient facts in his complaint to establish that Werner acted with actual malice when it included the disputed statements in the Employment Verification Report it sent to FedEx and Elder-Beerman. Therefore, Werner is entitled to assert the defense of qualified privilege. Because Dickens's complaint fails to offer facts sufficient to rebut Werner's qualified privilege defense, Dickens's complaint fails to state a claim for which relief can be granted.

However, the Court finds outright dismissal of Dickens's pro se complaint, as Werner urges, to be a drastic outcome, disproportionate to the defect in Dickens's complaint and therefore unjust. Thus, on its own motion and pursuant to Fed. R. Civ. P. 12(e), the Court grants Dickens leave to file a more definite statement within fourteen (14) days of receipt of this Order to conform his allegation of actual malice to the standards discussed in this Opinion.

**V.**

For the reasons discussed above, the Court:

1. **ADOPTS IN PART** the Report and Recommendation(dkt. no. 15);

2. **DENIES** Werner’s Motion to Dismiss (dkt. no. 8); and

3. **GRANTS** Dickens leave to file a more definite statement within fourteen (14) days of receipt of this order.

It is so **ORDERED**.

The Court directs the Clerk of Court to transmit copies of this order to counsel of record and to the pro se petitioner, certified mail, return receipt requested.

Dated: October 10, 2012.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE